IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  08-cv-02049-LTB-MJW

JAMES N. LANGE, JR.,

        Plaintiff,

v.

CITY OF GRAND JUNCTION, COLORADO,
STAN HILKEY, in his official capacity as Mesa County Sheriff,
GLEN COYNE, in his individual capacity,
BRANDI POWER, in her individual capacity,
DEREK ROSALES, in his individual capacity,
KEITH WILSON, in his individual capacity,

        Defendants.

_____

## ORDER
_____

This police misconduct case is before me on Defendants, City of Grand Junction, Glen Coyne, Derek Rosales, and Keith Wilson's ("Grand Junction Defendants"), Motion to Dismiss Second Amended Complaint [**Docket # 35**], Plaintiff's Response [**Docket # 41**], and the Grand Junction Defendants' Reply [**Docket # 48**].  Oral argument would not materially assist the determination of this motion.  After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT in part and DENY in part the Grand Junction Defendants' Motion to Dismiss Second Amended Complaint [**Docket # 35**].

## I.  BACKGROUND

The relevant facts alleged in the Second Amended Complaint [**Docket # 27**] are as follows.  Plaintiff—at all times relevant to this case—was a resident of Grand Junction, Colorado.  The Western Colorado Drug Task Force ("Drug Task Force")—a body comprised of

representatives from the Grand Junction Police Department, the Mesa County Sheriff's Office, and the Drug Enforcement Administration—concluded Plaintiff was engaged in drug trafficking. The individual members of the Drug Task Force conspired to force Plaintiff to leave the Grand Junction area by means of a series of harassing activities—including besmirching Plaintiff's name and subjecting Plaintiff to unwarranted traffic stops—designed to ruin Plaintiff's local reputation.  As a result of the harassment, Plaintiff moved out of Colorado.

Plaintiff filed the present action on September 23, 2008.  Plaintiff filed a Second Amended Complaint [**Docket # 27**] on February 9, 2009.  The Second Amended Complaint alleged three claims for relief: a claim that the individual Defendants deprived, and all Defendants conspired to deprive, Plaintiff of his right to be free from unreasonable searches and seizures ("Claim One"); a claim that the individual Defendants deprived, and all Defendants conspired to deprive, Plaintiff of the protected liberty interests in his reputation secured by the Fourteenth Amendment ("Claim Two"); and a claim that all Defendants deprived, or conspired to deprive, Plaintiff of his protected liberty interest in living and working where he chooses, also secured by the Fourteenth Amendment ("Claim Three").

On February 25, 2009, I dismissed the case as against Defendants Miller, Tyer, and Weyler for failure to effectuate proper service [**Docket # 37**].  I do not address the claims against these defendants here.  The Grand Junction Defendants now move for dismissal of the claims against them for failure to state a claim on which relief may be granted and on grounds of qualified immunity.

## II.  STANDARDS OF REVIEW

### A.  Failure to State a Claim—FED. R. CIV. P. 12(b)(6)

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice.  *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).  Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.  *Id.*  Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim."  *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all factual allegations in the complaint.  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A district court should dismiss the complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atlantic*, 127 S. Ct. at 1974; *see also Kay*, 500 F.3d at 1218.  "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic*, 127 S. Ct. at 1974). "Plausibility," however, does not refer to the likelihood that the allegations can be proven or even that the allegations are true. *See id.*

"The determination of whether a complaint contains enough allegations of fact to state a claim to relief that is plausible on its face is dependent on the context of the claim raised." *Mink v. Knox*, 566 F. Supp. 2d 1217, 1221 (D. Colo. 2008); *see also Robbins*, 519 F.3d at 1248. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, *L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Accordingly, "within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief." *Knox*, 566 F. Supp. 2d at 1222; *see Bell Atlantic*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

## B.  Qualified Immunity

The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. *See Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). This qualified immunity inquiry requires analysis of two distinct questions: (1) whether—taken in the light most favorable to the plaintiff as the party asserting the injury—the plaintiff alleges sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated

was clearly established at the time of the alleged violation in a sufficiently analogous factual setting.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson*, 129 S. Ct. 808.  While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question.  *See Pearson*, 129 S. Ct. at 818.

The determination of whether a right was clearly established within a sufficiently analogous factual setting must be made within the specific context of the case, not as a broad general proposition.  *Saucier*, 533 U.S. at 201; *see also Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina*, 960 F.2d at 1498.  This does not mean the prior case law must have precisely the same facts, however, but rather requires a particularized inquiry to determine whether the contours of the right were sufficiently defined by prior case law such that "a reasonable official would understand what he is doing violates that right."  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity.  *See Saucier*, 533 U.S. at 201.  For purposes of a motion to dismiss based on qualified immunity, therefore, a plaintiff must allege sufficient facts to show he plausibly, not just speculatively, meets both inquiries.  *See Robbins*, 519 F.3d at 1247.  A plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective

allegations against the state." *Id*. at 1249–50 (emphasis in original).  Mere conclusory

allegations are insufficient.  *See id.*

### III.  ANALYSIS

#### A.  Claim One—Unreasonable Search and Seizure

Plaintiff alleges the following facts in support of Claim One: officers of the Mesa County

Sheriff's Office expressed their intent to "chas[e] Jimmy Lange out of town," or words to that

effect; officers of the Mesa County Sheriff's office—and one officer of the Grand Junction

Police department, who is not named as a Defendant—spread rumors that Plaintiff was engaged

in drug trafficking and money laundering; Defendants Coyne and Wilson and other unnamed

Grand Junction police officers stopped Plaintiff numerous times between September 2006 and

June 2008 for unsubstantiated traffic violations; in June 2008, Mesa County Sheriff's officers

stopped a vehicle Plaintiff was riding in as a passenger and subjected the vehicle to a canine

search without cause or reason; the dog was known to the Grand Junction Defendants to have

"hit" on drugs previously when no drugs were actually found; unnamed Grand Junction and

Mesa County officers followed Plaintiff's vehicle without reason or cause; Mesa County officers

observed Plaintiff while he was moving from his home; and the Grand Junction Defendants did

not respond to a request by Plaintiff's father to look into these allegations of wrongdoing.  As the

motion to dismiss is brought by the Grand Junction Defendants, I consider only the sufficiency

the allegations against these parties.  *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 1349 (3d ed. 2004).

When a plaintiff alleges a conspiracy, he must do more than merely allege the defendants

acted similarly—he must also allege the defendants had an agreement to act in the alleged

manner.  *See Bell Atlantic*, 127 S. Ct. at 1965, 1970; *Snell v. Tunnell*, 920 F.2d 673, 701 (10th

Cir. 1990).  The "agreement" alleged by Plaintiff is the Mesa County Sheriff's officers'

announced plan to drive Plaintiff out of town.  Plaintiff does not allege the Grand Junction

Defendants knew of or acquiesced to this plan, nor does Plaintiff allege the Grand Junction

Defendants had a similar plan or goal.  The only allegation against the Grand Junction

Defendants that supports Plaintiff's conspiracy claim—other than the alleged unreasonable

searches and seizures themselves—is the allegation that some of the Grand Junction Defendants

are members of the Drug Task Force along with the Mesa County Sheriff's Office.  This is

insufficient to insulate Plaintiff's conspiracy claim from dismissal under Rule 12(b)(6).  *See Bell

Atlantic*, 127 S. Ct. at 1964–65, 1970 (holding—for purposes of claiming a civil

conspiracy—allegations of parallel activity are insufficient without additional allegations of the

"specific time, place, or person involved" in the alleged conspiracies "that raise[] a suggestion of

a preceding agreement, not merely parallel conduct that could just as well be independent

action").

        Having determined that Plaintiff fails to allege sufficient facts "to show that if all the

alleged facts—and only the alleged facts—are believed to be true" he has a claim for relief

against the Grand Junction Defendants for conspiracy to deprive him of his right to be free of

unreasonable searches and seizures—*see Knox*, 566 F. Supp. 2d at 1222—I now turn to

Plaintiff's claim that the Grand Junction Defendants actually deprived him of this right.  As the

Grand Junction Defendants—with the exception of the City of Grand Junction, which is not

entitled to a defense of qualified immunity, *see Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.

2000)—raise the defense of qualified immunity, I must make a specific inquiry into the

allegations against each individual Defendant to determine whether Plaintiff's complaint "make[s] clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations against the state." *See Robbins*, 519 F.3d at 1249–50 (emphasis in original). Mere conclusory allegations are insufficient. *See id.*

### 1. *Defendant Coyne*

Plaintiff's allegations against Defendant Coyne include: (1) in 2007, Defendant Coyne stopped Plaintiff and issued him a traffic ticket for failing to use a turn signal that was later dismissed; and (2) during the first four months of 2008, Defendant Coyne stopped Plaintiff for unfounded traffic violations and without reasonable suspicion.

Plaintiff directs me to no Tenth Circuit or Supreme Court authority indicating the issuance of a traffic ticket that is later dismissed amounts to a constitutional violation. Indeed, case law from other circuits indicates that—while possibly inconvenient—improperly issued traffic tickets do not raise constitutional concerns separate from those that arise from an improper traffic stop. *See, e.g., Vasquez v. City of Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985). Accordingly—to the extent Plaintiff claims Defendant Coyne violated Plaintiff's constitutional rights by issuing a later-dismissed traffic ticket—qualified immunity is appropriate.

Plaintiff's allegations regarding the stops themselves, however, raise issues of constitutional concern. A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *See United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1307 (10th Cir. 2006). "The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Bradford*, 423

8

F.3d 1149, 1156 (10th Cir. 2005).

Analyzing a traffic stop for reasonableness requires application of the two-part inquiry set forth in *Terry v. Ohio*. *See Bradford*, 423 F.3d at 1156 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The *Terry* inquiry requires the Court to first ask whether the stop was justified at its inception. *See Bradford*, 423 F.3d at 1156. A stop will be justified at its inception only when the officer has, "based on all the circumstances, a 'particularized and objective basis for suspecting' the person stopped of 'criminal activity.'" *See United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). If the Court determines the stop was justified initially, it must then inquire whether the scope of the stop was reasonably related to the circumstances which justified interference in the first place. *See Bradford*, 423 F.3d at 1156. If, in the process of executing the stop, the officer becomes aware that no criminal activity is actually afoot, "termination of the encounter is required. . . . At this point, the detention is no longer reasonable, as the officer's concerns have proven illusory." *See Winder*, 557 F.3d at 1133 (citing *United States v. Peters*, 10 F.3d 1517, 1522 (10th Cir. 1993)).

The Second Amended Complaint alleges Defendant Coyne stopped Plaintiff for traffic violations without reasonable suspicion that such violations had actually taken place. Assuming—as I must at this stage—that these allegations are true, Defendant Coyne's actions were unreasonable under clearly established law. *See Pearson*, 129 S. Ct. at 815; *Guerrero-Espinoza*, 462 F.3d at 1307; *Bradford*, 423 F.3d at 1156. While Plaintiff will eventually bear the burden to proffer evidence supporting his allegations, dismissal on qualified immunity grounds—to the extent dismissal addresses Plaintiff's claims that he was stopped without

9

reasonable suspicion—is inappropriate at this time.

### 2. *Defendant Rosales*

Plaintiff's allegations against Defendant Rosales are found in paragraph 30(b) of the Second Amended Complaint: "Mr. Lange and his father spoke with defendant Rosales, the supervisor called to the scene when defendant Coyne gave Mr. Lange a traffic ticket for an unsubstantiated charge, but defendant Rosales refused to take any action to rectify the illegal actions of defendant Coyne."  Although inartfully drafted, this allegation appears to comprise three averments relevant to the qualified immunity inquiry: (1) Defendant Coyne issue an invalid traffic ticket to Defendant; (2) Plaintiff and Plaintiff's father told Defendant Rosales the traffic ticket was invalid; (3) despite being in a position to do so, Defendant Rosales did not instruct Defendant Coyne to rescind the ticket.

Plaintiff does not allege Defendant Rosales was involved in initiating or prolonging the traffic stop.  Accordingly, the constitutional analysis applied to unreasonable traffic stops is inapplicable here.  Instead, Plaintiff must show that—by failing to instruct Defendant Coyne to rescind the invalid ticket—Defendant Rosales violated Plaintiff's clearly-established constitutional rights.  As noted in the discussion regarding Defendant Coyne above, improperly issued traffic tickets do not raise constitutional concerns separate from those that arise from an improper traffic stop.  *See Vasquez*, 757 F.2d at 773.  Where the charge against the supervisor is that the supervisor failed to prevent or remedy the unconstitutional conduct of an underling, a finding that the underling did not act unconstitutionally mandates a finding that the supervisor likewise did not act unconstitutionally.  *See Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006).

Defendant Rosales was not obligated to believe Plaintiff's claim that the ticket was invalid. *See Nelson v. McMullen*, 207 F.3d 1202, 1207 (10th Cir. 2000). Neither was Defendant Rosales obligated to undertake an independent analysis of the validity of the traffic ticket issued by Defendant Coyne. *See Baker v. McCollan*, 443 U.S. 137, 145–47 (1979). Defendant Rosales's failure to instruct Defendant Coyne to rescind the ticket, therefore, does not raise a constitutional violation. *See id.* No other allegations against Defendant Rosales remaining, dismissal on grounds of qualified immunity is appropriate. *See id.*

### 3.  Defendant Wilson

Plaintiff's single allegation against Defendant Wilson is that, on or about September 2006, Defendant Wilson stopped Plaintiff without reasonable suspicion and told Plaintiff that—unless he admitting to speeding, which he was not—Defendant Wilson would issue Plaintiff a ticket for the more serious crime of "racing." Assuming—as I must at this stage—that these allegations are true, Defendant Wilson's actions were unreasonable under clearly established law. *See Pearson*, 129 S. Ct. at 815; *Guerrero-Espinoza*, 462 F.3d at 1307; *Bradford*, 423 F.3d at1156.

### 4.  City of Grand Junction

Although "[q]ualified immunity is not available as a defense to municipal liability," a municipality nonetheless will not be held liable for the actions of its employees unless it can be shown "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *See Seamons*, 206 F.3d at 1029. Plaintiff makes no such allegations here. Dismissal of Claim One in favor of the City of Grand Junction

is therefore appropriate.  *See Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1256 (10th Cir. 2007).

### B.  Claim Two—Deprivation of Liberty Interest in Reputation

Plaintiff's allegations of conspiracy in Claim Two fail for the same reasons noted above in reference to Claim One.  Accordingly, I address only Plaintiff's claims that the Grand Junction Defendants actually deprived him of his liberty interest in his reputation.

In order to establish a claim of deprivation of a liberty interest in reputation, a plaintiff must establish two things: "first, that the complained of conduct stigmatized or otherwise damaged the plaintiff's reputation, and second, that the reputational damage was entangled with some other tangible interest such as employment."  *Ewers v. Board of County Comm'rs of Curry County*, 802 F.2d 1242, 1247 (10th Cir. 1986) (citations omitted).

The only allegation under Claim Two against any of the Grand Junction Defendants is a single allegation against Defendant Wilson arising from the September 2006 traffic stop.  Plaintiff does not allege any facts supporting a conclusion that the 2006 traffic stop stigmatized or otherwise damaged his reputation, or that the reputational damage was entangled with some other tangible interest such as employment.  Accordingly, within the context of the claim alleged, the complaint fails to contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, Plaintiff has a claim for relief.  *See Knox*, 566 F. Supp. 2d at 1222; *Bell Atlantic*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

### C.  Claim Three—Deprivation of Liberty Interest in Living and Working in the Place of Plaintiff's Choosing

Plaintiff's allegations of conspiracy in Claim Three fail for the same reasons noted above in reference to Claim One.  Accordingly, I address only Plaintiff's claims that the Grand Junction Defendants actually deprived him of his liberty interest in living and working in the place of his choosing.  It is not disputed that the Fourteenth Amendment protects "the right of the citizen . . . to live and work where he will."  *See Washington v. Glucksberg*, 521 U.S. 702, 760 (1997) (Souter, J., concurring) (quoting *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897)).

The only allegations under Claim Three against any of the Grand Junction Defendants relate to the unwarranted traffic stops.  Plaintiff does not allege any facts supporting a conclusion that these stops resulted in any limitation on his ability to engage in his chosen profession as a plumber, nor that these stops resulted in any limitation on his ability to live in his chosen location of Grand Junction.  Likewise, Plaintiff directs me to no Tenth Circuit or Supreme Court authority indicating that such interference—if it occurred at all—was clearly established by prior case law to constitute an infringement of Plaintiff's protected interest.  Dismissal on grounds of qualified immunity is therefore appropriate.

## IV.  CONCLUSION

Accordingly, the Grand Junction Defendants' Motion to Dismiss Second Amended Complaint [**Docket # 35**] is GRANTED in part and DENIED in part as follows:

1.      All claims against the City of Grand Junction are DISMISSED WITH PREJUDICE under FED. R. CIV. P. 12(b)(6);

2.      All conspiracy claims against Defendants Rosales, Coyne, and/or Wilson are DISMISSED WITH PREJUDICE under FED. R. CIV. P. 12(b)(6);

13

3.      All Fourth Amendment claims against Defendant Rosales are DISMISSED WITH PREJUDICE on the basis of qualified immunity;

4.      To the extent Plaintiff claims Defendant Coyne violated Plaintiff's constitutional rights by issuing a subsequently dismissed traffic ticket, Plaintiff's claims are DISMISSED WITH PREJUDICE on the basis of qualified immunity;

5.      To the extent Plaintiff claims Defendant Wilson deprived Plaintiff of his liberty interest in his reputation, Plaintiff's claims are DISMISSED WITH PREJUDICE under FED. R. CIV. P. 12(b)(6);

6.      To the extent Plaintiff claims Defendants Coyne, and/or Wilson deprived Plaintiff of his liberty interest in living and working in the place of his choosing, Plaintiff's claims are DISMISSED WITH PREJUDICE on the basis of qualified immunity;

7.      The Grand Junction Defendants' Motion is otherwise DENIED;

8.      Not dismissed by this Order are all claims against Defendant Brandi Power and Plaintiff's Fourth Amendment claims against Defendants Coyne and Wilson to the extent these claims allege an unreasonable search and seizure arising out of the alleged unwarranted traffic stops;

9.      Each party shall bear its own costs.


Dated: April   10   , 2009.

                              BY THE COURT:


                                s/Lewis T. Babcock
                              Lewis T. Babcock, Judge