**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 08-cv-02049-LTB

JAMES N. LANGE, JR.,

       Plaintiff,

v.

CITY OF GRAND JUNCTION, COLORADO,
STAN HILKEY, in his official capacity as Mesa County Sheriff,
GLEN COYNE, in his individual capacity,
BRANDI POWER, in her individual capacity,
DEREK ROSALES, in his individual capacity,
KEITH WILSON, in his individual capacity,

       Defendants.

_____

**ORDER**
_____

This police misconduct case is before me on Defendant, Brandi Power's, Motion to

Dismiss the Second Amended Complaint [**Docket # 45**], Plaintiff's Response [**Docket # 59**], and

Defendant Power's Reply [**Docket # 75**].  Oral argument would not materially assist the

determination of this motion.  After consideration of the motion, the papers, and the case file,

and for the reasons stated below, I GRANT in part and DENY in part Defendant Power's Motion

to Dismiss the Second Amended Complaint [**Docket # 45**].

## I. BACKGROUND

The relevant facts alleged in the Second Amended Complaint [**Docket # 27**] are as

follows.  Plaintiff—at all times relevant to this case—was a resident of Grand Junction,

Colorado.  The Western Colorado Drug Task Force ("Drug Task Force")—a body comprised of

representatives from the Grand Junction Police Department, the Mesa County Sheriff's Office,

and the Drug Enforcement Administration—concluded Plaintiff was engaged in drug trafficking. The individual members of the Drug Task Force conspired to force Plaintiff to leave the Grand Junction area by means of a series of harassing activities—including besmirching Plaintiff's name and subjecting Plaintiff to unwarranted traffic stops—designed to ruin Plaintiff's local reputation.  As a result of the harassment, Plaintiff moved out of Colorado.

Plaintiff filed the present action on September 23, 2008.  Plaintiff filed a Second Amended Complaint [**Docket # 27**] on February 9, 2009.  The Second Amended Complaint alleged three claims for relief: a claim that the individual Defendants deprived, and all Defendants conspired to deprive, Plaintiff of his right to be free from unreasonable searches and seizures ("Claim One"); a claim that the individual Defendants deprived, and all Defendants conspired to deprive, Plaintiff of the protected liberty interests in his reputation secured by the Fourteenth Amendment ("Claim Two"); and a claim that all Defendants deprived, or conspired to deprive, Plaintiff of his protected liberty interest in living and working where he chooses, also secured by the Fourteenth Amendment ("Claim Three").

On February 25, 2009, I dismissed the case as against Defendants Miller, Tyer, and Weyler for failure to effectuate proper service [**Docket # 37**].  On April 10, 2009, I dismissed all claims against Defendants City of Grand Junction and Rosales, and certain claims against individual Defendants Coyne and Wilson [**Docket # 50**].  The April 10, 2009, Order did not address any of the claims against Defendants Hilkey or Power and denied dismissal of the claims against Defendants Coyne and Wilson to the extent the claims alleged an unreasonable search and seizure arising out of allegedly unwarranted traffic stops.  Defendant Power now moves for dismissal of the claims against her for failure to state a claim on which relief may be granted and

2

on grounds of qualified immunity.

## II.  STANDARDS OF REVIEW

### A.  Failure to State a Claim—FED. R. CIV. P. 12(b)(6)

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice.  *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).  Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.  *Id.*  Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all factual allegations in the complaint.  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A district court should dismiss the complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic*, 127 S. Ct. at 1974; *see also Kay*, 500 F.3d at 1218.  "Plausible" in this context refers "to the scope of the allegations in a

complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic*, 127 S. Ct. at 1974).  "Plausibility," however, does not refer to the likelihood that the allegations can be proven or even that the allegations are true.  *See id.*

"The determination of whether a complaint contains enough allegations of fact to state a claim to relief that is plausible on its face is dependent on the context of the claim raised." *Mink v. Knox*, 566 F. Supp. 2d 1217, 1221 (D. Colo. 2008); *see also Robbins*, 519 F.3d at 1248.  The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Accordingly, "within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief." *Knox*, 566 F. Supp. 2d at 1222; *see Bell Atlantic*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

### B.  Qualified Immunity

The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law.  *See Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).  This qualified immunity inquiry requires analysis of two distinct questions: (1) whether—taken in the light most favorable to the plaintiff as the party asserting the injury—the plaintiff alleges sufficient facts to show the public official's conduct violated

4

plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson*, 129 S. Ct. 808. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. *See Pearson*, 129 S. Ct. at 818.

The determination of whether a right was clearly established within a sufficiently analogous factual setting must be made within the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201; *see also Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina*, 960 F.2d at 1498. This does not mean the prior case law must have precisely the same facts, however, but rather requires a particularized inquiry to determine whether the contours of the right were sufficiently defined by prior case law such that "a reasonable official would understand what he is doing violates that right." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. *See Saucier*, 533 U.S. at 201. For purposes of a motion to dismiss based on qualified immunity, therefore, a plaintiff must allege sufficient facts to show he plausibly, not just speculatively, meets both inquiries. *See Robbins*, 519 F.3d at 1247. A plaintiff must "make

clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective

allegations against the state." *Id*. at 1249–50 (emphasis in original).  Mere conclusory

allegations are insufficient.  *See id*.

### III. ANALYSIS

#### A.  Claim One—Unreasonable Search and Seizure

Plaintiff alleges the following facts in support of Claim One: officers of the Mesa County

Sheriff's Office—not including Defendant Power—expressed their intent to "chas[e] Jimmy

Lange out of town," or words to that effect; officers of the Mesa County Sheriff's

Office—including Defendant Power—and one officer of the Grand Junction Police Department,

who is not named as a Defendant, spread rumors that Plaintiff was engaged in drug trafficking

and money laundering; Defendant Power told an unnamed third party that Plaintiff was a major

drug dealer and would be arrested soon, and further instructed the unnamed third party not to

associate with Plaintiff; Defendants Coyne and Wilson and other unnamed Grand Junction police

officers stopped Plaintiff numerous times between September 2006 and June 2008 for

unsubstantiated traffic violations; in June 2008, Mesa County Sheriff's officers—including

Defendant Power—stopped a vehicle Plaintiff was riding in as a passenger and subjected the

vehicle to a canine search without cause or reason; the dog was known to the Grand Junction

police to have "hit" on drugs previously when no drugs were actually found; during the stop,

Plaintiff was detained for an excessive amount of time; unnamed Grand Junction and Mesa

County officers followed Plaintiff's vehicle without reason or cause; Mesa County officers—and

possibly Defendant Power—observed Plaintiff while he was moving from his home; and the

Grand Junction police did not respond to a request by Plaintiff's father to look into these

allegations of wrongdoing.  As the motion to dismiss is brought by the Defendant Power, I

consider only the sufficiency of the allegations against her.  *See* 5B CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1349 (3d ed. 2004).

When a plaintiff alleges a conspiracy, he must do more than merely allege the defendants

acted similarly—he must also allege the defendants had an agreement to act in the alleged

manner. *See Bell Atlantic*, 127 S. Ct. at 1965, 1970; *Snell v. Tunnell*, 920 F.2d 673, 701 (10th

Cir. 1990).  The "agreement" alleged by Plaintiff is the Mesa County Sheriff's officers'

announced plan to drive Plaintiff out of town.  Plaintiff does not allege Defendant Power knew

of or acquiesced to this plan, nor does Plaintiff allege Defendant Power had a similar plan or

goal.

The only allegations against Defendant Power that support Plaintiff's conspiracy

claim—other than the alleged unreasonable searches and seizures themselves—are an allegation

that Defendant Power is a Mesa County Sheriff's officer and an allegation that Defendant Power

spread rumors that Plaintiff was a drug dealer.  These allegations are insufficient to insulate

Plaintiff's conspiracy claim from dismissal under Rule 12(b)(6).  *See Bell Atlantic*, 127 S. Ct. at

1964–65, 1970 (holding—for purposes of claiming a civil conspiracy—allegations of parallel

activity are insufficient without additional allegations of the "specific time, place, or person

involved" in the alleged conspiracies "that raise[] a suggestion of a preceding agreement, not

merely parallel conduct that could just as well be independent action").

Having determined that Plaintiff fails to allege sufficient facts "to show that if all the

alleged facts—and only the alleged facts—are believed to be true" he has a claim for relief

against Defendant Power for conspiracy to deprive him of his right to be free of unreasonable

searches and seizures—*see Knox*, 566 F. Supp. 2d at 1222—I now turn to Plaintiff's claim that Defendant Power actually deprived him of this right. As Defendant Power raises the defense of qualified immunity, I must make a specific inquiry into the allegations against her to determine whether Plaintiff's complaint "make[s] clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations against the state." *See Robbins*, 519 F.3d at 1249–50 (emphasis in original). Mere conclusory allegations are insufficient. *See id*. Plaintiff's allegations specifically against Defendant Power include: (1) in June 2008, Defendant Power pulled over a vehicle owned by Plaintiff, and in which Plaintiff was riding as a passenger, without reasonable suspicion; (2) Defendant Power detained Plaintiff for an excessive amount of time; (3) Defendant Power subjected Plaintiff's car to a dog search without cause.

"It is well-established that an automobile stop is subject to the Fourth Amendment imperative that guarantees the right to be free from unreasonable searches and seizures." *United States v. Broadway*, 580 F. Supp. 2d 1179, 1180 (D. Colo. 2008); *see United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1307 (10th Cir. 2006); *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). Analyzing an automobile stop for reasonableness requires application of the two-part inquiry set forth in *Terry v. Ohio*. *See Bradford*, 423 F.3d at 1156 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The *Terry* inquiry requires the Court to first ask whether the stop was justified at its inception. *See Bradford*, 423 F.3d at 1156. A stop will be justified at its inception only when the officer has, "based on all the circumstances, a 'particularized and objective basis for suspecting' the person stopped of 'criminal activity.'" *See United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

If the Court determines the stop was justified initially, it must then inquire whether the

8

scope of the stop was reasonably related to the circumstances which justified interference in the first place. *See Bradford*, 423 F.3d at 1156. "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). If, in the process of executing the stop, the officer becomes aware that no criminal activity is actually afoot, "termination of the encounter is required. . . . At this point, the detention is no longer reasonable, as the officer's concerns have proven illusory." *See Winder*, 557 F.3d at 1133 (citing *United States v. Peters*, 10 F.3d 1517, 1522 (10th Cir. 1993)).

The Second Amended Complaint alleges both that Defendant Power stopped Plaintiff's vehicle without reasonable suspicion that any violations had taken place and that Defendant Power detained Plaintiff for an excessive period of time. Assuming—as I must at this stage—that these allegations are true, Defendant Power's actions were unreasonable under clearly established law. *See Pearson*, 129 S. Ct. at 815; *Winder*, 557 F.3d at 1133; *Guerrero-Espinoza*, 462 F.3d at 1307; *Bradford*, 423 F.3d at 1156.

Similarly, qualified immunity is inappropriate on Plaintiff's claim that Defendant Power subjected Plaintiff's vehicle to a dog search without cause. Although the use of a narcotics dog during the course of a lawful traffic stop does not implicate privacy interests under the Fourth Amendment—*see Broadway*, 580 F. Supp. 2d at 1188 (discussing cases)—the stop at issue here is alleged to be unlawful. A dog search of a vehicle that is conducted while the vehicle is being unlawfully detained implicates the Fourth Amendment in the same manner as any other search conducted in conjunction with any other improper seizure. *See Caballes*, 543 U.S. at 408. Moreover, even if the initial stop was justified, it is well-established that a dog search may not be

employed if the dog search extends "beyond the measure of time required for the officer to complete . . . the purpose for which" the vehicle was initially detained. *See United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990). Assuming—as I must at this stage—that the stop was unjustified at its inception and was prolonged for an excessive amount of time in order to effectuate the dog search, Defendant Power's actions in initiating the dog search were unreasonable under clearly established law. While Plaintiff will eventually bear the burden to proffer evidence supporting his allegations, dismissal on qualified immunity grounds is inappropriate at this time.

### B.  Claim Two—Deprivation of Liberty Interest in Reputation

Plaintiff's allegations of conspiracy in Claim Two fail for the same reasons noted above in reference to Claim One. Accordingly, I address only Plaintiff's claims that Defendant Power actually deprived him of his liberty interest in his reputation. In order to establish a claim of deprivation of a liberty interest in reputation, a plaintiff must establish two things: "first, that the complained of conduct stigmatized or otherwise damaged the plaintiff's reputation, and second, that the reputational damage was entangled with some other tangible interest." *Ewers v. Board of County Comm'rs of Curry County*, 802 F.2d 1242, 1247 (10th Cir. 1986) (citations omitted). Plaintiff's allegations against Defendant Power—namely, that Defendant Power told third parties Plaintiff was a major drug dealer, would be arrested imminently, and should not be associated with for this reason—are sufficient to meet the first inquiry.

Turning to the second inquiry, the Supreme Court has clarified that the "other tangible interest" must itself be one with a constitutional dimension. *See Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991); *Paul v. Davis*, 424 U.S. 693, 708–09 (1976). Thus, in cases where the "other

tangible interest" is potential employment, the defamatory statement generally must be made in the context of terminating employment with a Government entity.  *See Siegert*, 500 U.S. 234 (holding where "the alleged defamation was not uttered incident to the termination of . . . employment" any damage to "future employment prospects" may be "recoverable under state tort law but it is not recoverable" under Section 1983); *Paul v. Davis*, 424 U.S. at 706 ("But the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment.").  In cases where the "intangible interest" is something other than employment with a Government entity, it is not "sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official" that has an incidental impact on a protected interest; the defamation itself must "officially remov[e] the interest from the recognition and protection previously afforded by the State."  *See Paul v. Davis*, 424 U.S. at 710.  Accordingly, "damage to 'prospective employment opportunities' is too intangible to constitute a liberty or property interest" unless the defamation forecloses employment altogether.  *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989).  Plaintiff has not alleged any facts showing a protected interest under these tests.

Where—as here—the interest allegedly infringed is not one guaranteed, provided, or otherwise protected by the state, "any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law, nor has it worked any change of [Plaintiff]'s status."  *See Paul v. Davis*, 424 U.S. at 712.  Accordingly, Plaintiff has not alleged "denial of any right

vouchsafed to him by the State and thereby protected under the Fourteenth Amendment.  That

being the case, [Defendant Power's statements], however seriously they may have harmed

[Plaintiff]'s reputation, did not deprive him of any 'liberty' or 'property' interests protected by

the Due Process Clause."  *See id.*  Dismissal on grounds of qualified immunity is therefore

appropriate.

<u>C.  Claim Three—Deprivation of Liberty Interest in Living and Working</u>

<u>in the Place of Plaintiff's Choosing</u>

Plaintiff's allegations of conspiracy in Claim Three fail for the same reasons noted above

in reference to Claim One.  Accordingly, I address only Plaintiff's claims that Defendant Power

actually deprived him of his liberty interest in living and working in the place of his choosing.  It

is not disputed that the Fourteenth Amendment protects "the right of the citizen . . . to live and

work where he will."  *See Washington v. Glucksberg*, 521 U.S. 702, 760 (1997) (Souter, J.,

concurring) (quoting *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897)).  Like Plaintiff's

reputation claim, however, in order for this claim to survive Plaintiff must allege his right to live

and work in Grand Junction was foreclosed altogether.  *See Paul v. Davis*, 424 U.S. at 710;

*Phelps*, 886 F.2d at 1269.  Plaintiff's allegations do not meet this test.  Dismissal on grounds of

qualified immunity is therefore appropriate on this claim as well.

## IV.  CONCLUSION

Accordingly, Defendant, Brandi Power's, Motion to Dismiss the Second Amended

Complaint [**Docket # 45**] is GRANTED in part and DENIED in part as follows:

1.      All conspiracy claims against Defendant Power are DISMISSED WITH

PREJUDICE under FED. R. CIV. P. 12(b)(6);

12

2.      Claim Two (Deprivation of Liberty Interest in Reputation) and Claim Three (Deprivation of Liberty Interest in Living and Working in the Place of Plaintiff's Choosing) against Defendant Power are DISMISSED WITH PREJUDICE on the basis of qualified immunity;

3.      Defendant Power's Motion is otherwise DENIED;

4.      Each party shall bear its own costs.

Dated: May ___14th__, 2009.

BY THE COURT:


___s/Lewis T. Babcock___
Lewis T. Babcock, Judge